#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUDITH PATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 08-CV-709-PJC |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

#### OPINION AND ORDER

Claimant, Judith Pate ("Pate"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Pate's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Pate appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Pate was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

#### Claimant's Background

At the time of the hearing before the ALJ on September 11, 2007, Pate was 63 years old. (R. 659). She completed ninth grade. (R. 667). She never received a GED. (R. 430).

1

In the early 1990s, Pate had worked as a certified medical assistant. (R. 424-25). Pate testified that the last time she worked was in 2002, when she worked as a stocker at Wal-Mart. (R. 422-23, 431). She testified that she quit working due to bladder problems, back problems, and an inability to do the work, such as climbing ladders and lifting. (R. 431-32). Pate testified that she had a leaky bladder that continued to leak at the time of the hearing even though she had had two surgeries. (R. 432). She used products, such as pads, for bladder incontinence, and at times when she worked at Wal-Mart, her need to change her pad and her scheduled breaks would not coincide, and she would not be allowed to take an early break. (R. 432-33).

Pate testified that her back pain at the time was all through her back when she was lifting. (R. 433). She described the pain as going all through her, including her hips and her shoulder blades. *Id.* She would rate the pain in her back and shoulder blades as an 8 on a scale of 1 to 10. (R. 435). She did not have the pain when she wasn't lifting, and when she first arrived at work she would be fine for thirty minutes. (R. 433-34). Her grip was also affected, causing her to have trouble opening jars. (R. 435-36). She experienced numbness in her hands. (R. 447). She also dropped things. (R. 437, 447-48).

She had experienced pain for several years before she worked for Wal-Mart, including pain from lifting patients when she had worked in nursing. *Id.* She was only pain free in the time period between the nursing jobs and the Wal-Mart job when she was taking her pain medications. (R. 437-38). The pain affected her ability to bend over. (R. 438). She could also lie down and rest to relieve the pain, but sometimes that didn't work. *Id.* She experienced muscle spasms. (R. 439). Some of the medications her doctors prescribed made her dizzy or drowsy. *Id.* The pain medication was effective in relieving her pain. (R. 440). When sleeping, she would sometimes wake up in pain and need to take medication before returning to sleep. (R.

2

441).

Pate did not have any problems doing the cooking in her household. (R. 441-42). Mopping, vacuuming, and standing at the sink doing dishes were examples of chores that caused her pain, but she would complete them. (R. 442). At the time of her asserted date of onset in 2002, she could probably lift 20 pounds, but the lifting sometimes would have made her arms hurt. (R. 443).

Pate testified that she worked briefly at McDonald's after she left Wal-Mart, but she couldn't do the work due to the required lifting and standing. (R. 446-47).

A sizable number of pages of the medical records before the Court date from the early 1990s. (R. 237-75, 312-83, 385-410). Because Pate has alleged that her onset of disability was October 1, 2002, the Court declines to summarize the records from the 1990s, with the exception of the few cited by Pate in her Opening Brief. (Dkt. #19). On June 7, 1997, chest x-rays were taken for a preoperative cardiopulmonary evaluation. (R. 275). The radiologist noted no evidence of acute cardiopulmonary pathology, but also observed "[d]egenerative disk space narrowing and end-plate spurring noted near the thoracolumbar junction." *Id.* On June 15, 1997, Pate was seen at Columbia Wagoner Hospital with a chief complaint of fever and pain. (R. 262). The diagnoses were bronchitis and status post bladder suspension. *Id.* A discharge summary related to Pate's July 1997 surgery to "take down" the bladder suspension that had been performed by surgery on June 10, 1997, explained that the suspension had caused problems with voiding. (R. 237-39). The summary concludes that Pate was able to undergo bladder training, she resumed voiding without difficulty and without bladder distention, and that she was pleased with the outcome. (R. 239).

Pate presented to the emergency room at Claremore Regional Hospital on October 30, 1999 with a chief complaint of back pain. (R. 295-301). Diagnoses were back strain not otherwise specified and deQuervain's disease, referring to Pate's complaint of pain in her right wrist. (R. 301). She was prescribed Toradol and Flexeril. *Id.*

Pate was seen by Helen Franklin, M.D. as a new patient on February 25, 2000, complaining of back pain, with stress and nervousness. (R. 281). The assessments were chronic pain and hypertension, and medications were prescribed. *Id.* She returned to Dr. Franklin's clinic on May 10, 2000 and was apparently seen by a physician's assistant. (R. 278). Pate had multiple complaints and stated that she could not work. *Id.* The practitioner stated that a review of systems was difficult because Pate would agree with any abnormality about which he inquired. *Id.* He assessed her with hypertension, myalgia, and depression. *Id.* She was prescribed medication, and when blood tests showed a risk of myocardial infarction, Pate was started on additional medications. (R. 278-80).

In August 2001, Pate was treated for hallux rigidus of her right foot with cheilectomy, a surgical procedure. (R. 284-89).

Pate was treated by Matthew Johnson, M.D. from June 6, 2002 through October 3, 2003. (R. 122-36). On June 6, 2002, Pate was seen, complaining of swelling, with a note that appears to state "bones ache." (R. 135). Five assessments were noted in handwriting with abbreviations, and four of them appear to be hypertension, gastroesophageal reflux disease ("GERD"), "prior CVA," and "OA." (R. 136). CVA can be an abbreviation for cerebrovascular accident, or stroke,[1] and OA can be a medical abbreviation for ostheoarthritis. Pate's medications were adjusted. (R. 136). On July 22, 2002, Pate complained that she had pain in the area of her

---

[1]   Taber's Cyclopedic Medical Dictionary 352-53 (17th ed. 1993).

4

shoulder blades and upper arms. (R. 131). There was a note that Pate had clocked out early from work a few days earlier because she was sick to her stomach "worse with movement of shoulder & neck." *Id.* The assessment was hypertension and muscle strain, and her medications were adjusted. (R. 132). On October 20, 2002, the hand-written notes of Pate's chief complaints are not completely clear but included shoulder pain. (R. 125). The physical examination appears to have been positive for pain and reduced range of motion in Pate's left shoulder. *Id.* The assessment included bursitis of the left shoulder, "DJD," presumably an abbreviation for degenerative joint disease, OA, hypertension and GERD. (R. 126).

A visit with Dr. Johnson on September 18, 2003 stated that it was a check up, but also noted increased severity of urinary incontinence. (R. 123). The notes of the physical examination and assessment are not completely legible, but the assessment included "TIA," presumably an abbreviation for transient ischemic attack, and incontinence, and Pate's medications were adjusted. (R. 123-24).

Pate returned to see Dr. Franklin on August 12, 2004, and her complaints included leaky bladder, aches in her left shoulder and arm, and high blood pressure. (R. 185). Physical examination showed diffuse back pain upon palpitation. *Id.* Assessments included hypertension, urinary tract infection, and back pain. *Id.* On December 10, 2004, Pate complained of pain in her back, shoulder, and neck. (R. 181).

A non-examining consultant, Cynthia Kampschaefer Psy.D., on October 5, 2005, found that there was insufficient evidence to establish any mental impairments from the alleged onset date of October 1, 2002, through the date last insured, September 30, 2004. (R. 138-40).

**Procedural History**

On July 8, 2005, Pate filed an application for disability insurance benefits under Title II, 42 U.S.C. § 401 *et seq.* (R. 56-58). In this application, Pate alleged disability beginning October 1, 2002. Pate's application for benefits was denied in its entirety initially and on reconsideration. (R.37-43). A hearing before ALJ Richard J. Kallsnick was held September 11, 2007, in Tulsa, Oklahoma. (R. 415-64). By decision dated November 15, 2007, the ALJ found that Pate was not disabled at any time through the date of the decision. (R. 19-25). On October 20, 2008, the Appeals Council denied review of the ALJ's findings. (R. 5-8). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[2]  Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P,

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Pate met insured status through September 30, 2004. (R. 21). At Step One, the ALJ found that Pate had not engaged in any substantial gainful activity since her alleged onset date of October 1, 2002. *Id.* The ALJ found that Pate had medically determinable

---

App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

impairments of "depression, hypertension, excision/fusion of toes on right foot, and lumbar myofascial strain." *Id.* At Step Two, the ALJ found that Pate did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months, and that therefore, Pate did not have a severe impairment or combination of impairments. *Id.* The ALJ therefore found that Pate was not disabled through her date last insured of September 30, 2004. (R. 25).

## Review

The undersigned is mindful of the deferential standard of review, and that this Court is not to reweigh the evidence, but is to affirm unless there are errors of law or the ALJ's decision is not supported by substantial evidence. Having carefully reviewed the ALJ's decision and the evidence, the Court concludes that the ALJ's decision did not comply with legal standards and must be reversed.

To meet her burden under Step Two of the evaluative process, a claimant must show that impairments are "severe"; that is, that the impairments significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520. "Only those claimants with *slight* abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking" the subsequent steps of the sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring) (emphasis added).

Social Security Ruling ("SSR") 96-3p sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms; and (3) once the claimant establishes the requisite connection between the medically determinable impairment(s) and alleged symptom(s), the Commissioner is to then consider the "intensity, persistence, or

8

functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. SSR 96-3p.

While the Step Two burden has been characterized as "*de minimis*," the mere presence of a condition is not sufficient. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). Thus, in *Williamson*, the claimant did not carry his burden at Step Two, when he showed that he was abnormally underweight, but he did not allege any disabling symptoms related to that abnormal condition. *Id. See also Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (no error when ALJ found that radiculopathy was not severe before the insurance window closed when evidence of severity of radiculopathy appeared after the window).

While there is not a lot of medical evidence in the present case, the undersigned finds that Pate has successfully made the *de minimis* showing required at Step Two. One of the impairments that she testified had made her disabled at the time of her onset on October 1, 2002, was back pain and problems lifting. (R. 431-32). She testified that lifting caused pain in her back and in her shoulder blades. (R. 433-35). The objective medical evidence is that a radiologist noted degenerative disk space narrowing in June 1997. (R. 275). Pate made complaints of back and/or shoulder pain on several occasions between 2000 and 2004. (R. 125, 131, 135, 181, 185, 281, 278). While the pain was sometimes diagnosed as muscle strain, there were also diagnoses of chronic pain, osteoarthritis, degenerative joint disease, and bursitis. (R. 126, 136, 281). Physical examination on October 20, 2002 appears to have been positive for pain and for reduced range of motion in Pate's left shoulder. (R. 125). Physical examination on August 12, 2004 showed diffuse back pain upon palpitation. (R. 185). Pate had complained in a doctor's office in 2000 that she could not work, and in 2002, there was a note that she had

clocked out early from work, apparently due to symptoms involving her shoulder and neck. (R. 131, 278). While this evidence is not strong, it is of sufficient strength that it was error for the ALJ to stop at Step Two, and the ALJ was required to continue his analysis.[3]

Given this conclusion, it is not necessary to address the other issues raised by Pate, but the undersigned notes that the portion of the ALJ's decision discussing Pate's credibility does not appear to meet the requirement that an ALJ must give specific reasons for his credibility determination that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. On remand, if the ALJ finds that Pate's allegations of disabling pain are less than fully credible, his credibility determination must comply with the legal requirements.

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 3rd day of February 2010.

Paul J. Cleary
United States Magistrate Judge

---

[3] Given the conclusion of the undersigned that Pate satisfied her burden at Step Two regarding her impairments related to her back and shoulders, it is not necessary for the undersigned to discuss in detail the other impairments of which Pate complains. The Court notes, however, that even if the ALJ again finds these additional impairments to be non-severe at Step Two, the ALJ is required to consider them when the ALJ makes his RFC determination. *Hill*, 289 Fed. Appx. at 292 (citing SSR 96-8P).